(No. 5436—Claimant )

CENTRAL CEMETERY COMPANY OF ILLINOIS, An Illinois Corporation, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 11, 1973.*

McDONALD, SCHMIDT AND BAKER, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; ETTA COLE, Assistant Attorney General, for Respondent.

BURKS, J.

This claim, sounding in tort, is for the cost of repairs to claimant's steel cyclone fence, allegedly damaged by agents of the respondent during the course of snow removal.

Claimant is the owner and operator of Memorial Park Cemetery located in the Village of Skokie and fronting, in part, on the public highway known as Golf Road.

During the emergency created by the great blizzard which occurred on January 27, 1967, in the Chicago area, it was necessary for the Illinois Division of Highways to employ labor and equipment from the State of Wisconsin's Highway Commission. Respondent stipulated that it employed agents of Wisconsin Highway Commission to remove snow from the highway that is adjacent to claimant's premises on the north side of Golf Road in Skokie.

Claimant maintains a steel cyclone fence around its cemetery property, including the fence along the north side of Golf Road. In attempting to clear snow from the Golf Road highway shortly after the great blizzard, respondent's agents using endloaders, lifted the snow over claimant's fence onto claimant's property. In so doing, they seriously damaged claimant's fence along the north side of Golf Road east of Skokie Boulevard.

Claimant was obliged to replace its damaged fence and did cause said damaged fence to be replaced by the United States Steel Corporation Cyclone Fence Division at a cost of $1,310. The replaced fence was also painted by an employee of the claimant at a labor cost of $250 plus $50 for painting materials. Claimant asks for damages in the sum of $1,610.

The only testimony in the record bearing on respondent's negligence is contained in the deposition of Louis Plowmin, claimant's vice-president and general manager. The pertinent portions of Mr. Plowmin's testimony is abstracted as follows:

"Well, we had the big snowstorm, and they came in to move the snow from Golf Road; they had these end-loaders and they tried to put the snow over into the cemetery, which they had no right to do. They had no permission from us to do it. Well, they bent the fence down and tore it up. I saw them trying to put the snow over the fence. They covered the fence up; they didn't know where the fence was at, and they just destroyed it. I told them that they were tearing the fence down. I could see what they were doing. They wouldn't even talk to me. They just kept on going. I called the State Highway Department and talked to Mr. Mierzychie. He told me that he did have charge of them and that they "were hired from the State of Wisconsin. I told him what had happened. He said, 'wait until the snow melts down now so we can see what the damage is and we'll take care of it'. Then he told me to go ahead and have it done. I said, 'No, we don't do it that way. You have it done'. And the next time I talked to him he said he wasn't interested; he gave me another phone number to call."

Claimant's 3 exhibits, attached to the deposition, clearly show the damage done to claimant's fence. We find that claimant has made a prima facie case of negligence against the respondent; that no rebuttal testimony or evidence was offered by the respondent; and that claimant has proved its case as to the negligence of the respondent by a preponderance of the evidence. Our conclusion is amply supported by the authority of *Henderson* v. *State*, 24 C.C.R. 35, cited in claimant's brief.

There is no issue of contributory negligence in this matter.

The only question remaining is the amount of claimant's damages. Respondent stipulated that the claimant paid $1,310 for the United States Steel Corporation, Cyclone Division, for the replacement of the damaged fence and $50 for the necessary materials for painting it. Mr Louis Plowmin testified that the fence was approximately two years old at the time of the damaging occurrence, and that "it was just like a new fence". He also testified that the replaced fence was painted by an employee, and that the cost of labor for painting the fence was $250. The evidence supports our finding that the amount claimed for this labor is reason-

able and should be included in claimant's award. This is supported by our ruling in *Badger Petroleum Co.* v. *State, 24 C.C.R. 117*, cited in claimant's brief.

We find that the evidence of damages presented to the court justifies an award of $1,610 to the claimant.

Claimant is hereby awarded the sum of $1,610.00.